

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 23 CR 537-1 |
| v. | |
| NATHANIEL LEE BUTLER-LUDWIG | Judge John F. Kness |

## PLEA AGREEMENT

1.  This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant NATHANIEL LEE BUTLER-LUDWIG, and his attorney, THOMAS BREEN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.  The indictment in this case charges defendant with possession with intent to distribute a controlled substance, namely, a quantity of Methylenedioxymethamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) (Count Two).

3.  Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4.  Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Two of the indictment, which charges defendant with knowingly and intentionally possessing with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of Methylenedioxymethamphetamine, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about October 10, 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant NATHANIEL LEE BUTLER-LUDWIG did knowingly and intentionally possess with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of Methylenedioxymethamphetamine, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

Specifically, BUTLER-LUDWIG acknowledges that, in October 2023, co-defendant Robinson and a person who, unbeknownst to BUTLER-LUDWIG, was a

2

confidential source ("CS") working with law enforcement, exchanged multiple text messages and phone calls setting up the purchase of Methylenedioxymethamphetamine ("MDMA"). BUTLER-LUDWIG acknowledges that Robinson and the CS agreed to meet on October 10, 2023, for the CS to purchase one kilogram of MDMA. BUTLER-LUDWIG agreed with Robinson to provide one kilogram of MDMA to the CS.

On October 10, 2023, at approximately 7:43 p.m., BUTLER-LUDWIG arrived at Robinson's apartment, located in Chicago, Illinois. BUTLER-LUDWIG brought approximately 1000.3 grams of what he knew to be MDMA in a backpack. BUTLER-LUDWIG intended to distribute the MDMA to the CS.

BUTLER-LUDWIG acknowledges that after he arrived at Robinson's apartment, Robinson and the CS discussed where they would meet to conduct the transaction. At one point, Robinson called the CS and said, "Ya talk to my homie" and gave the phone to BUTLER-LUDWIG. BUTLER-LUDWIG then said, "I brought this shit all the way over here. Why don't you guys just want to come up here, look at it, check it out? I can count the money. We're all adults, so there's no like shady shit going on in a car and we're not putting ourselves in danger." By this, BUTLER-LUDWIG meant that he wanted the MDMA transaction to occur at Robinson's apartment. The CS refused to go inside Robinson's apartment and proposed that they meet at a nearby restaurant. Because of this, BUTLER-LUDWIG decided to cancel

the transaction. BUTLER-LUDWIG responded, "Alright. Sure, sure. Never mind bro. Thanks for wasting my time. I appreciate it."

After this conversation with the CS, BUTLER-LUDWIG left Robinson's apartment with the backpack containing MDMA. BUTLER-LUDWIG entered a ride share and traveled to the intersection of Fullerton Avenue and Western Avenue in Chicago, Illinois. BUTLER-LUDWIG then exited the rideshare. Law enforcement officers approached BUTLER-LUDWIG and announced that they were law enforcement officers. BUTLER-LUDWIG dropped his backpack and a cell phone and ran eastbound across Western Avenue. Law enforcement officers chased after BUTLER-LUDWIG and ultimately arrested him. Near the location of his arrest, BUTLER-LUDWIG discarded a second cell phone. BUTLER-LUDWIG acknowledges that law enforcement recovered his backpack, which contained the approximately 1000.3 grams of MDMA that he intended to distribute to the CS.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

  a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least three years, and up to any number of years, including life.

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

5

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2023 Guidelines Manual.

      b.    **Offense Level Calculations.**

          i.    The base offense level is 26, pursuant to Guideline §§ 2D1.1(a)(5) and (c)(7), and Application Note 8, because the amount of controlled substances involved in the offense of conviction for which defendant is accountable is approximately 1000.3 grams of Methylenedioxymethamphetamine, equivalent to 500.15 kilograms of converted drug weight, which is at least 400 kilograms but less than 700 kilograms of converted drug weight.

          ii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

          iii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court

determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    iv. Based on the facts now known to the government, defendant does not receive any criminal history points from Chapter Four, Part A, and otherwise meets the criteria set forth in Guidelines § 4C1.1(a). Therefore, the offense level is decreased by 2 levels.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level, is 21 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release and fine the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case.

Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does

not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

14. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 23 CR 537.

15. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

16. Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

9

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

　　i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

　　ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

　　iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

　　iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the

10

judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

17. Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights

11

specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which

defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

21. Defendant agrees to cooperate with the United States Attorney's Office in collecting any ordered fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

22. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

23. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

24. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any

term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25.   Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

26.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

27.   Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he

understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: **Sep. 24, 2024**

ANDREW ERSKINE
Digitally signed by ANDREW ERSKINE
Date: 2024.08.09 17:21:16 -05'00'

Signed by Andrew C. Erskine on behalf of
MORRIS PASQUAL
Acting United States Attorney

ANNE YONOVER
Digitally signed by ANNE YONOVER
Date: 2024.09.18 13:51:26 -05'00'

ANNE YONOVER
Assistant U.S. Attorney

NATHANIEL LEE BUTLER-LUDWIG
Defendant

THOMAS BREEN
Attorney for Defendant

15