UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL LEE BUTLER-LUDWIG | 23 CR 537-1<br><br>Honorable John F. Kness |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On October 10, 2023, defendant Nathaniel Lee Butler-Ludwig planned to deliver approximately 1000.3 grams of Methylenedioxymethamphetamine to a confidential source ("CS"), who unbeknownst to defendant was working with law enforcement. The CS communicated with Willie B. Robinson III, defendant's co-defendant, regarding the purchase of the MDMA. Defendant agreed to supply the MDMA that the CS wanted to purchase. Ultimately, the purchase did not occur, but law enforcement arrested defendant shortly after he left his co-defendant's apartment, and law enforcement found approximately a kilogram of MDMA in defendant's backpack. For the reasons set forth below, a low-end Guidelines sentence of imprisonment, followed by a three-year term of supervised release, is sufficient, but not greater than necessary, to satisfy the principles set forth in the Sentencing Guidelines and 18 U.S.C. § 3553(a).

**I. BACKGROUND**

On October 10, 2023, defendant intended to distribute approximately 1000.3 grams of Methylenedioxymethamphetamine ("MDMA") to a confidential source ("CS"), who was working with law enforcement. PSR ¶¶ 2, 7-8. Earlier that month, Willie B. Robinson III ("Robinson"), defendant's co-defendant, and the CS exchanged multiple text messages and phone calls setting up the purchase of the MDMA. *Id.*

¶ 7. Ultimately, they agreed to meet on October 10, 2023, to conduct the purchase. *Id*. Defendant agreed with Robinson to provide one kilogram of MDMA to the CS. *Id*.

In the evening, on October 10, 2023, defendant arrived at Robinson's apartment with approximately 1 kilogram of MDMA in a backpack. *Id*. ¶ 8. Defendant intended to distribute the MDMA to the CS that night. *Id*. After defendant arrived at Robinson's apartment, Robinson and the CS discussed where they would meet to conduct the transaction. Gov. Version of the Offense, p. 1. At one point, Robinson called the CS and said, "Ya, talk to my homie" and Robinson gave the phone to defendant. *Id*. Defendant then said, "I brought this shit all the way over here. Why don't you guys just want to come up here, look at it, check it out? I can count the money. We're all adults, so there's no like shady shit going on in a car and we're not putting ourselves in danger." *Id*. at 1-2. The CS refused to go inside Robinson's apartment and instead proposed that they all meet at a nearby restaurant. *Id*. at 2. Defendant then cancelled the transaction and told the CS, "Alright. Sure, sure. Never mind bro. Thanks for wasting my time. I appreciate it." *Id*.

After this conversation, defendant left Robinson's apartment with the backpack containing the MDMA. *Id*. Defendant took a ride share to the intersection of Fullerton Avenue and Western Avenue in Chicago, Illinois. *Id*. After exiting the rideshare, law enforcement officers approached defendant and announced that they were law enforcement officers. *Id*. Defendant dropped his backpack and a cell phone and ran. *Id*. Law enforcement officers followed defendant and ultimately arrested him. *Id*. Near the location of his arrest, defendant discarded a second cell phone. *Id*.

2

Law enforcement recovered defendant's backpack, and found approximately 1000.3 grams of MDMA. *Id*. Defendant had planned to distribute the MDMA that was found in his backpack to the CS earlier that night, but because defendant, Robinson, and the CS could not agree on where to conduct the transaction, the transaction never occurred. *Id*.

On October 11, 2023, defendant was charged by complaint with knowingly and intentionally possessing with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of Methylenedioxymethamphetamine, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). R. 1. On November 8, 2023, defendant and Robinson were charged in a two-count indictment. R. 16. Defendant was charged with one count of knowingly and intentionally possessing with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of Methylenedioxymethamphetamine, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 (Count Two). R. 16. On September 24, 2024, defendant pleaded guilty to Count Two of the indictment pursuant to a written plea agreement. R. 50, 51.

## II.  GUIDELINES CALCULATIONS

As a matter of procedure, the Court "*must* begin [its] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh v. United States*, 569 U.S. 530, 541 (2013) (quoting *Gall v. United States*, 552 U.S. 38,

3

50 n. 6 (2007)). "Failing to calculate the correct Guidelines range constitutes procedural error." *Id.*

### A. Offense Level

The government agrees with the offense level calculations set forth in the PSR. PSR ¶¶ 13-25. The government agrees that the base offense level for Count Two is 26, pursuant to Guidelines §§ 2D1.1(a)(5), 2D1.1(c)(7), and Application Note 8(D). Defendant possessed approximately 1000.3 grams of MDMA, which is equivalent to 500.15 kilograms of converted drug weight. *Id.* at ¶ 14; U.S.S.G § 2D1.1, app. note 8(D). Accordingly, pursuant to Guidelines § 2D1.1(c)(7), the base offense level is 26 because defendant possessed at least 400 kilograms, but less than 700 kilograms of converted drug weight. PSR ¶ 14; U.S.S.G § 2D1.1(c)(7).

The government agrees that defendant is entitled to acceptance of responsibility credit, pursuant to Guidelines § 3E1.1, and a three-level reduction in the offense level is appropriate. PSR ¶¶ 20-21. The government further agrees that defendant does not receive any criminal history points from Chapter Four, Part A, and otherwise meets the criteria set forth in Guidelines § 4C1.1(a). *Id.* ¶ 22. Therefore, a two-level reduction in the offense level is appropriate. *Id.* Accordingly, the total offense level for Count Two is 21. *Id.* ¶ 23.

### B. Criminal History Category

The government agrees with the criminal history category calculations set forth in the PSR. *Id.* ¶¶ 26-35. Defendant's criminal history points equal zero and his criminal history category is I. *Id.* ¶ 30.

4

### C. Guideline Range

Therefore, based on the facts now known to the government, the anticipated offense level for Count Two is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release and fine the Court may impose. *Id.* ¶ 98.

### III. THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a) WARRANT A LOW-END GUIDELINES SENTENCE

Sentencing has four purposes: retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). The Court must impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). In doing so, the Court must consider the statutory factors outlined in 18 U.S.C. § 3553(a)(1)-(7), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and] (3) the kinds of sentences available.

*Id.* § 3553(a)(1)-(3). The Court must also respect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as well as "the need to provide restitution to any victim of the offense." *Id.* § 3553(a)(6)-(7).

5

Finally, the Court must consider the Guidelines range and any pertinent policy statements issued by the United States Sentencing Commission. *Id*. § 3553(a)(4)-(5). Although the Sentencing Guidelines are only advisory, "[a]s a matter of administration and to secure nationwide consistency, [they] should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Moreover, the Guidelines minimize unwarranted sentencing disparities and "remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also Booker v. United States*, 543 U.S. 220, 250, 253 (2005) (noting that "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity" and "diminish[ing] sentencing disparity").

Considering the § 3553(a) factors, and the Guidelines range, the government recommends a low-end Guideline sentence of 37 months' imprisonment. Such a sentence appropriately reflects the nature and circumstances of defendant's offense, the defendant's history and characteristics, the need to reflect the seriousness of the offense, the need to promote respect for the law, and the need to afford adequate deterrence and protect the public from further crimes of the defendant.

**A.   A Low-end Guideline Sentence of Imprisonment Accurately Reflects the Nature and Circumstances of the Offense**

Distribution of narcotics is a serious offense, and that is especially the case here, where defendant planned to distribute over a kilogram of MDMA. "MDMA acts as both a stimulant and psychedelic, producing an energizing effect, distortions in

6

time and perception, and enhanced enjoyment of tactile experiences."[1] While use of MDMA can cause feelings of pleasure and euphoria, it also impairs an individual's thought processes and perception, which can result in dangerous behavior.[2] Furthermore, MDMA can also cause "confusion, anxiety, depression, paranoia, sleep problems and drug craving."[3] Additionally, some studies suggest that "chronic use of MDMA can produce damage to the serotonin system," and it may "increase the risk of long term, perhaps permanent problems with the memory and learning."[4]

MDMA is usually consumed in a tablet form.[5] While a typical "user quantity" will vary depending on the person purchasing the MDMA, most tablets range from 50 to 150 milligrams.[6] "MDMA users usually take MDMA by 'stacking' (taking three or more tablets at once) or by 'piggy-backing' (taking a series of tablets over a short period of time)."[7]

---

[1] *See* Department of Justice/Drug Enforcement Administration, Drug Fact Sheet, Ecstasy/MDMA, available at https://www.dea.gov/sites/default/files/2020-06/Ecstasy-MDMA-2020_0.pdf (last viewed Jan. 8, 2025).

[2] *See* National Institute on Drug Abuse, Psychedelic and Dissociative Drugs, How Do Psychedelic and Dissociative Drugs Affect the Mind and Body?, available at https://nida.nih.gov/research-topics/psychedelic-dissociative-drugs#affect-the-mind-and-body (last viewed Jan 8, 2025).

[3] *See* Department of Justice/Drug Enforcement Administration, Drug Fact Sheet, Ecstasy/MDMA, available at https://www.dea.gov/sites/default/files/2020-06/Ecstasy-MDMA-2020_0.pdf (last viewed Jan. 8, 2025).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

In this case, defendant agreed to supply his co-defendant, Robinson, with a kilogram of MDMA so that they could sell the MDMA to a CS. PSR ¶ 8. Defendant transported the kilogram of MDMA to Robinson's apartment on October 10, 2023. *Id.* Defendant spoke to the CS and tried to convince the CS to enter Robinson's apartment to complete the drug transaction. Gov. Version of the Offense, p. 1. When the CS refused to complete the transaction inside of Robinson's apartment, defendant canceled the drug transaction. PSR ¶ 8. Defendant played an active role in attempting to complete the drug transaction on October 10, 2023, as demonstrated by his actions and comments to the CS.

When law enforcement approached defendant after he left Robinson's apartment, defendant ran from law enforcement officers and dropped his backpack, which contained the kilogram of MDMA. *Id.* Defendant left approximately $13,000 worth of MDMA on the street as he attempted to flee from law enforcement. Had defendant distributed the kilogram of MDMA to the CS, he would have placed significant amounts of MDMA into the community and he would have helped to further perpetuate the harms attendant to drug-trafficking, including the spread of addiction, overdoses, and drug-related violence. Defendant's actions displayed a disregard not only for the law, but for the wellbeing of others. A low-end Guideline sentence is appropriate to accurately reflect the gravity of defendant's actions.

### B. A Low-end Guideline Sentence of Imprisonment Accurately Reflects the History and Characteristics of Defendant

Defendant's history and characteristics also support a low-end Guideline sentence. Defendant has lived in Chicago since he was approximately three years old.

PSR ¶ 49. He reported having a "very great" childhood, despite the fact that his parents divorced when he was about ten years old. *Id*. ¶¶ 37, 39, 43. He also indicated; however, that his parents' divorce was "very traumatizing," that he felt abandoned by his father, and that his mother was "somewhat 'vindictive' about the divorce." *Id*. ¶ 40. Nevertheless, defendant reported that he currently has a good or very good relationship with his parents, his stepmother, and his sister. *Id*. ¶¶ 37-38. He indicated that he had good relationships with his extended family members, as well, and that when he was a child, he traveled to see his maternal grandparents in Germany and his paternal grandparents in Dawson, Illinois. *Id*. ¶ 43. These strong familial relationships are both mitigating and aggravating. They are mitigating in that defendant seems to have the support he needs to be successful upon his release from custody. They are aggravating; however, because these familial relationships make it more difficult to understand why defendant turned to distributing narcotics.

School was particularly challenging for defendant because he was frequently bullied as a result of being "a little awkward and weird" due to being on the autism spectrum. *Id*.¶ 42. He had a difficult time making friends and was physically attacked multiple times. *Id*. ¶¶ 42, 48. This experience, and the trauma associated with it, are mitigating.

Also mitigating is the fact that defendant has suffered from mental health issues from a young age. *Id*. ¶¶ 57-66. He has been in and out of counseling attempting to address these mental health issues since he was approximately ten

9

years old. *Id*. Defendant expressed that he has experienced suicidal ideations since the age of ten and thinks about suicide "in passing" almost every day. *Id*. ¶ 65.

Defendant reported using and abusing various drugs, and alcohol, since he was a teenager. *Id*. ¶¶ 71-77. Defendant has lost his sense of smell, which impacts his sense of taste, due to "chemical trauma" from inhaling drugs. *Id*. ¶ 53. He also reported vison issues due to nerve damage from drug use and a loss of sensitivity throughout his body also due to drug use. *Id*. ¶¶ 53, 74. Defendant attempted to get sober approximately two years ago, which has been challenging. *Id*. ¶ 70. As with any addiction, defendant acknowledged that it is a "constant struggle" to remain sober. *Id*. ¶ 79. Defendant's personal experience with drug abuse is both mitigating and aggravating. Given defendant's personal experience with losing his senses of smell and taste due to drug use, as well as the nerve damage he has experienced, defendant certainly knows how dangerous drug use is and the negative impacts drug use has on one's body.

As indicated in the PSR, law enforcement executed search warrants on defendant's cell phones. *Id*. ¶ 9. The search warrant results indicated that this was not the first-time defendant engaged in illegal conduct. Based on the results of the search warrant, defendant operated various encrypted platforms, and he had a "digital marketplace over which he sold drugs, including MDMA, cocaine, marijuana, and various pills. This is also aggravating.

Considering defendant's history and characteristics in their totality, a low-end Guideline sentence is appropriate in this case.

### C. A Low-end Guideline Sentence Reflects the Seriousness of the Offense and Promotes Respect for the Law

A low-end Guideline sentence of imprisonment would reflect the seriousness of the offense and promote respect for the law. As noted above, defendant's conduct is serious: he planned to distribute approximately one kilogram of MDMA, which equates to thousands of user quantities, into the community. Thus, a low-end Guideline sentence in this case is sufficient, but not greater than necessary, to reflect the seriousness of the offense. Further, such a sentence promotes respect for the law by sending a message that this type of conduct will not be tolerated, and that there are consequences to planning to distribute narcotics.

### D. A Low-end Guideline Sentence of Imprisonment Affords Adequate Deterrence and Protects the Public from Further Crimes of Defendant

With respect to deterrence, the Seventh Circuit has acknowledged that an "important goal of sentencing is 'to afford adequate [general] deterrence to criminal conduct.'" *United States v. Warner,* 792 F.3d 847, 860 (7th Cir. 2015) (quoting 18 U.S.C. § 3553(a)(2)(B)) (second alteration in original); *see also United States v. McQueen,* 727 F.3d 1144, 1158 (11th Cir. 2013) ("[G]eneral deterrence . . . is one of the key purposes of sentencing." (quoting *United States v. Medearis,* 451 F.3d 918, 920-21 (8th Cir. 2006) (second alteration in original))). Additionally, the Court should consider the need for specific deterrence. *United States v. Maxfield*, 812 F.3d 1127, 1130 (7th Cir. 2016).

A low-end Guideline sentence would achieve the goal of general deterrence by sending a message to the public that possessing narcotics, with the ultimate goal of

11

distributing them, is a serious offense that threatens the safety of the public, and there are serious consequences for engaging in such conduct.

As for specific deterrence, defendant has no criminal history. PSR ¶¶ 26-35. As a result, a custodial sentence of 37 months will likely have a deterrent effect on defendant and discourage defendant from committing additional crimes in the future. This deterrent effect with also protect the public from further crimes of the defendant.

### IV. SUPERVISED RELEASE AND FINE

Pursuant to 21 U.S.C. § 841(b)(1)(C), the Court must impose a three-year term of supervised release for Count Two. PSR ¶ 100. Additionally, pursuant to Guidelines § 5D1.2(c), the Guideline term of supervised release is three-years. *Id.* ¶ 101.

The government agrees with the Probation Officer's recommendation that the defendant be sentenced to three years of supervised release, which is the statutory minimum in this case. PSR, Sentencing Recommendation, p. 3-4. A three-year term of supervised release will promote the sentencing objectives of deterring recidivism, protecting the public, and assisting in defendant's rehabilitation and reintegration into society. The government does not object to the conditions proposed in the PSR, and requests that discretionary condition 23 be added. *See* PSR at 20-26.

In determining an appropriate fine, the Court should first consider any "punishments prescribed by statute," because "'judgments about the appropriate punishment for an offense belong in the first instance to the legislature.'" *United States v. Davis*, 859 F.3d 429, 435 (7th Cir. 2017) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336 (1998)). The Court should also consider the factors set

forth in 18 U.S.C. § 3572(a), as well as the appropriate factors under 18 U.S.C. § 3553(a). *Id.* at 436; *see also* U.S.S.G. § 5E1.2(d).

The government agrees with the Probation Officer's position that defendant will need funds to re-establish himself upon release. PSR ¶¶ 92-96. Accordingly, given defendant's financial condition and the anticipated period of incarceration, the government believes that preserving defendant's solvency will reduce his chances of recidivism upon release, and therefore, the government is not seeking a fine.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose a low-end Guideline sentence of 37 months' imprisonment, as well as a three-year term of supervised release.

Dated: January 8, 2025

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: */s/ Anne L. Yonover*
ANNE L. YONOVER
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

13